**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**Allen Laurence Richardson,**<br><br>**aka Allen Lawrence Richardson,**<br>      **Debtor(s).** | **CHAPTER 13**<br>**CASE NO.: 19-68019-lrc** |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>_ _ | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _<br>_ _ |
| **Selene Finance LP,**<br>                  **Movant,**<br>v.<br><br>**Allen Laurence Richardson,**<br>      **Debtor(s),**<br><br>**Melissa J. Davey,**<br>       **Trustee,**<br>              **Respondents.** | CONTESTED MATTER |

<u>**NOTICE OF HEARING**</u>

**PLEASE TAKE NOTICE** that Selene Finance LP, has filed a Motion for Relief from
the Automatic Stay and related papers with the Court seeking an order granting relief
from the automatic stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the motion
in Courtroom 1204 at U. S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, Georgia
30303, at 1:30 p.m. on May 12, 2020.

Given the current public health crisis, hearings may be telephonic only. Please check the
"Important Information Regarding Court Operations During COVID-19 Outbreak" tab at
the top of the GANB Website prior to the hearing for instructions on whether to appear in
person or by phone.

Your rights may be affected by the Court's ruling on these pleadings.  You should read
these pleadings carefully and discuss them with your attorney, if you have one in this
bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do
not want the court to grant the relief sought in these pleadings or if you want the court to
consider your views, then you and/or your attorney must attend the hearing.  You may
also file a written response to the pleading with the Clerk at the address stated below, but
you are not required to do so.  If you file a written response, you must attach a certificate
stating when, how, and on whom (including addresses) you served the response.  Mail or

deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, **75 Ted Turner Drive S.W., Atlanta, Georgia 30303.**  You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date.  If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that the final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Date: April 7, 2020

**Robertson, Anschutz, Schneid & Crane, LLC**

/s/ Andrea L. Betts
Andrea L. Betts
Attorney for Creditor
Georgia Bar # 432863
Robertson, Anschutz, Schneid & Crane, LLC
10700 Abbott's Bridge Road, Suite 170
Duluth, GA  30097
Telephone: 470-321-7112
Fax: 404-393-1425
Email: abetts@rascrane.com

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| IN RE:<br><br>**Allen Laurence Richardson,**<br><br>**aka Allen Lawrence Richardson,**<br><br>        **Debtor(s).** | **CHAPTER 13**<br>**CASE NO.: 19-68019-lrc** |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ |
| **Selene Finance LP,**<br>                        Movant,<br>v.<br><br>**Allen Laurence Richardson,**<br>        **Debtor(s),**<br>**Melissa J. Davey,**<br>        **Trustee,**<br>                    Respondents. | CONTESTED MATTER |

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

COMES NOW, Selene Finance LP, (hereinafter referred to as "Movant"), by and through its undersigned counsel, moves for relief from the automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Allen Richardson aka Allen Laurence Richardson, (hereinafter referred to as "Debtor(s)"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on

November 8, 2019.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor(s) have an interest.  Movant holds a security interest in the Debtor's real property now or formerly known as 2979 North 54th Street, Milwaukee, Wisconsin 53210 (hereinafter referred to as "Property") by virtue of a Security Deed dated June 19, 2009.  Said Security Deed secures a Note in the original principal amount of $57,488.00. The promissory note has been duly endorsed.

4.

The terms and conditions of the Note and Mortgage were later amended pursuant to the Loan Modification Agreement ("Agreement") made April 6, 2016. Said Agreement created a new principal balance of $54,666.09. A true and accurate copy of the Agreement is attached hereto.

5.

Movant alleges that the Debtor(s) are in default to Movant under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due.  As of March 31, 2020, the post-petition arrearage owed to Movant is $1,269.25 and consists of three (3) monthly mortgage payments at $634.55 (P&I $259.64; ESCROW $374.91), less a suspense balance of $634.40. An additional payment will come due April 1, 2020 and on the first day of each month thereafter until the loan is paid in full.

6.

The current unpaid principal balance due under the loan documents is approximately $51,273.93.  The Property is most recently valued at $120,597.00 by

Zillow.

7.

Movant's security interest in the Property is not adequately protected due to the Debtor(s) failure to maintain the mortgage payments.

8.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

9.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

**WHEREFORE**, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor(s) via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be

waived;

(d) That Movant be permitted to offer and provide Debtor(s) with

information regarding a potential forbearance agreement, loan

modification, refinance agreement, or other loan workout/loss

mitigation agreement, and to enter into such an agreement with

Debtor(s).

(e) That in the event of an Order granting relief from the automatic stay

and said Order also instructing the Chapter 13 Trustee to cease

disbursements on Movant's Proof of Claim, Fed. R. Bank. P.

3002.1 shall no longer apply as to Movant, as said Rule only

applies in Chapter 13 cases in which claims secured by a principal

residence are provided for under Section 1322(b)(5) of the Code in

the Chapter 13 Plan; and

 (f) For such other and further relief the Court deems just and proper.

Date: April 7, 2020

**Robertson, Anschutz, Schneid & Crane, LLC**

/s/ Andrea L. Betts
Andrea L. Betts
Attorney for Creditor
Georgia Bar # 432863
Robertson, Anschutz, Schneid & Crane, LLC
10700 Abbott's Bridge Road, Suite 170
Duluth, GA  30097
Telephone: 470-321-7112
Fax: 404-393-1425
Email: abetts@rascrane.com

**CERTIFICATE OF SERVICE**

I certify that I am over the age of 18 and that on April 7, 2020, I served a copy of

the foregoing Notice of Hearing and Motion for Relief from Automatic Stay was served

by electronic mail or by first class U.S. Mail, with adequate postage prepaid on the

following persons or entities at the addresses stated:

Shawn J. Eisenberg
Slipakoff and Slomka, PC
Suite 2100
3350 Riverwood Parkway
Atlanta, GA 30339

Allen Laurence Richardson
574 Haralson Drive SW
Lilburn, GA 30047

Melissa J. Davey
Melissa J. Davey, Standing Ch 13 Trustee
Suite 200
260 Peachtree Street, NW
Atlanta, GA 30303

Date: April 7, 2020

**Robertson, Anschutz, Schneid & Crane, LLC**

/s/ Andrea L. Betts
Andrea L. Betts
Attorney for Creditor
Georgia Bar # 432863
Robertson, Anschutz, Schneid & Crane, LLC
10700 Abbott's Bridge Road, Suite 170
Duluth, GA  30097
Telephone: 470-321-7112
Fax: 404-393-1425
Email: abetts@rascrane.com

# SUPPORTING DOCUMENTS

LOAN #: ▮▮▮▮

FHA Case No.
▮▮▮▮▮▮▮▮ . ▮▮▮

# NOTE

**Wisconsin**

---

JUNE 19, 2009                    Wauwatosa,                    WISCONSIN
[Date]                           [City]                        [State]

2979 North 54th Street, Milwaukee, WI 53210
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **THE EQUITABLE BANK, SSB**

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ******FIFTY SEVEN THOUSAND FOUR HUNDRED EIGHTY EIGHT AND NO/100******************************** Dollars (U.S.   $57,488.00   ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of  FIVE               percent ( 5.000% ) per year until the full amount of principal has been paid.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the     1ST          day of each month beginning on  AUGUST 1, 2009.          Any principal and interest remaining on the     1ST          day of JULY, 2039       will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at
**2290 NORTH MAYFAIR ROAD**
**WAUWATOSA, WI 53226**
or at such place as Lender may designate in writing by notice to Borrower.

I HEREBY CERTIFY THAT THIS IS TRUE AND CORRECT COPY OF THE ORIGINAL INSTRUMENT
BY ▮▮▮▮ 1-23-20

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S.     $308.61.    This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

[Check applicable box]   ☐ Graduated Payment Allonge     ☐ Growing Equity Allonge
                         ☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of  FOUR                         percent (    4.000%   ) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment

LOAN #:

in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.  WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____(Seal)
Allen Richardson

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
    Mortgage Corp.

Erla Carter-Shaw, E.V.P.

# ALLONGE TO NOTE

**LOAN NUMBER:** ▮▮▮▮▮▮ _____

Allonge to one certain Note dated June 19, 2009 _____ in

favor of THE EQUITABLE BANK, S.S.B., STATE SAVINGS BANK in the principal amount of

$57,488.00 _____ and executed by:

ALLEN RICHARDSON

Dated at Wauwatosa, WI this 19th____ day of June _____, 2009_____.

WITHOUT RECOURSE

PAY TO THE ORDER OF

TAYLOR, BEAN & WHITAKER MORTGAGE CORPORATION

BY: THE EQUITABLE BANK, S.S.B., STATE SAVINGS BANK

*Diane Rasmussen*

Diane Rasmussen, Asst. VP - Loan Servicing

**PROPERTY ADDRESS:**   2979 NORTH 54TH STREET
MILWAUKEE, WI 53210

ALLONGE TO NOTE

5

## MORTGAGE

DOCUMENT NUMBER  LOAN #: 7129408
after Recording Return To:
THE EQUITABLE BANK, MSB
ATTN: FINAL DOCUMENT DEPARTMENT
2290 NORTH MAYFAIR ROAD
WAUWATOSA, WI 53226

**DOC.#**

REGISTER'S OFFICE  | SS
Milwaukee County, WI |

RECORDED  07/31/2009  01·09PM

JOHN LA FAVE
REGISTER OF DEEDS
AMOUNT:              19.00
FEE EXEMPT 77.25 #:     0

PARCEL IDENTIFIER NUMBER. .306 0491 1
This instrument prepared by
THE EQUITABLE BANK, S.S.B.
2290 NO. MAYFAIR ROAD
MILWAUKEE, WI 53226

------------------------[Space Above This Line For Recording Data]------------------------

State of Wisconsin                                          FHA Case No

THIS MORTGAGE ("Security Instrument") is given on   JUNE 19, 2009.           The Mortgagor is
ALLEN RICHARDSON,  an unmarried person

("Borrower")

This Security Instrument is given to  THE EQUITABLE BANK, SSB

("Lender")

Borrower owes Lender the principal sum of  ***FIFTY SEVEN THOUSAND FOUR HUNDRED EIGHTY EIGHT AND
NO/100**********************************************************************  Dollars
(U S   $57,488.00   ). This debt is evidenced by Borrower's note dated the same date as this Security
Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
JULY 1, 2039.                          This Security Instrument secures to Lender. (a) the repayment of the debt
evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, (b) the payment of all
other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument, and (c) the
performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose,
Borrower does hereby mortgage, grant and convey to the Lender, with power of sale, the following described property
located in  Milwaukee                                        County, Wisconsin:
Lot One (1), in Block Four (4), in Hi-View, being a Subdivision of a part
of the Northeast One-quarter (1/4) of Section Fourteen (14), in Township
Seven (7) North, Range Twenty-one (21) East, in the City of Milwaukee,
Milwaukee County, Wisconsin,  This is Homestead property  This is a
Purchase Money Mortgage
APN #: 306 0491 1

which has the address of  2979 North 54th Street, Milwaukee

[Street, City]

Wisconsin       53210       ("Property Address").
                [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances
and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security
Instrument  All of the foregoing is referred to in this Security Instrument as the "Property "

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

FHA Wisconsin Mortgage - 4/96                                              Initials:
Online Documents, Inc                       Page  1  of 5                        WIVFHADE  0801

LOAN #

Borrower and Lender covenant and agree as follows
UNIFORM COVENANTS

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U S C Section 2601 et seq, and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note,

Fourth, to amortization of the principal of the Note, and

Fifth, to late charges due under the Note

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess

FHA Wisconsin Mortgage - 4/96
Online Documents, Inc.

Page 2 of 5

Initials:

WIVFHADE 0801

LOAN #:

proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to

FHA Wisconsin Mortgage - 4/96
Online Documents, Inc.

Page 3 of 5

Initials: _____
WIVFHADE 0601

LOAN #:

Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows.

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Accelerated Redemption Periods.** If (a) the Property is 20 acres or less in size, (b) Lender in an action to foreclose this Security Instrument waives all right to a judgment for deficiency and (c) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be 6 months from the date the judgment is entered if the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (b) and (c) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be 3 months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be 2 months from the date the judgment is entered.

**21. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "reasonable attorneys' fees" shall mean only those attorneys' fees allowed by that Chapter.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider      ☐ Growing Equity Rider      ☐ Planned Unit Development Rider
☐ Graduated Payment Rider      ☐ Other(s) [specify]

LOAN #: ██████

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_Allen Richardson_ (Seal)
Allen Richardson

STATE OF WISCONSIN,    MILWAUKEE                                County ss:

The foregoing instrument was acknowledged before me this  June 19, 2009
                                                                                      (date)
by  Allen Richardson
_____
(person acknowledging)

My Commission Expires:
(Seal)    7-10-11                         _Suellen L Carpenter_
                                                    Notary Public, State of Wisconsin

SUELLEN L CARPENTER
NOTARY PUBLIC
STATE OF WISCONSIN

FHA Wisconsin Mortgage - 4/96
Online Documents, Inc.                    Page  5  of 5                         WIVFHADE  0001

**FHA HOME AFFORDABLE
MODIFICATION AGREEMENT**

**RECORDED
04/26/2016  6:06 AM**

**JOHN LA FAVE
REGISTER OF DEEDS**
Milwaukee C████ WI

**AMOUNT: 30.00
FEE EXEMPT #:**
E-RETR CODE:
***This document has been
electronically recorded and
returned to the submitter. **

| Document Number | Document Title |
|---|---|
| ████████ | |

**Recording Area**

**When Recorded Mail to:**
**First American Title**
*Loss Mitigation Title Services-LMTS*
**P.O.Box 27670**
**Santa Ana, CA 92799**
**Attn: LMTS**

████████

**Parcel Identification Number (PIN)**

**Wisconsin**
**State**

**MILWAUKEE**
**County**

████████

**FAT Order No.**

**THIS SPACE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDINGINFORMATION
ADDITIONAL RECORDING FEE APPLIES**

Prepared by:  Michael L. Riddle
Middleberg Riddle Group
717 N. Harwood, Suite 1600
Dallas, TX  75201

Recording Requested By and Return To:
SELENE FINANCE LP
CUSTOMER SERVICE
9990 RICHMOND AVE, STE 400 S
HOUSTON, TX 77042
PIN: █████████

# FHA HOME AFFORDABLE MODIFICATION AGREEMENT

(Space Above This Line For Recording Data)

Loan No. ██████████                                                    Data ID: ██████
Borrower: **ALLEN RICHARDSON**
Original Recorded Date: July 31, 2009          Original Principal Amount: **$57,488.00**
FHA CASE NO.: ███████████           Current Unpaid Principal Balance: **$51,635.38**
                                    Interest Bearing Principal Balance: **$53,571.75**
                                                Partial Claim: **$1,094.34**

**(Step Two of Two-Step Documentation Process)**

Borrower ("I")[1]:  ALLEN RICHARDSON , AN UNMARRIED MAN    , whose address is **2979 N 54TH ST, MILWAUKEE, WISCONSIN  53210**

Lender ("Lender"): **SELENE FINANCE LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042**

Date of First Lien Security Instrument ("Mortgage") and Note ("Note"): **June 19, 2009**

Loan Number: ██████████

Property Address: **2979 N 54TH ST, MILWAUKEE, WISCONSIN  53210** ("Property")

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

---

1 If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I".  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Loan No: ███████    Data ID ████████

**Recorded in DOC# ███████ of the Official Records of the County Recorder's or Clerk's Office of MILWAUKEE COUNTY, WISCONSIN.**

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the First Lien Mortgage on the Property, and (2) the Note secured by the First Lien Mortgage. The First Lien Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Except for the subordinate Promissory Note and Security Instrument, capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents; I previously entered into the Trial Period Plan and the Loan Workout Plan with Lender.

I understand that after I sign and return the subordinate Promissory Note and Security Instrument and two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.**  I certify, represent to Lender and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.  I live in the Property as my principal residence, and the Property has not been condemned;

   C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

   D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the FHA Home Affordable Modification program ("Program"));

   E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G.  I have timely made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

Loan No: ███████████      Data ID: ████████

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 30 | 4.125 | 02/01/16 | $259.64 | $344.61, may adjust periodically | $604.25, may adjust periodically | 03/01/16 | 360 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.    I agree to pay in full the subordinate Promissory Note and any other amounts still owed under the Loan Documents by the earliest of : (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**          **08/14**      *(Page 4 of 8 Pages)*

Loan No: ████████████                                                    Data I████████

4.  **Additional Agreements.** I agree to the following:

    A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, the subordinate Promissory Note and the Security Instrument, unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

    B.   That this Agreement, the subordinate Promissory Note and Security Instrument shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

    C.   To comply, except to the extent that they are modified by this Agreement, the subordinate Promissory Note and Security Instrument, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

    D.   That I have been advised of the amount needed to fully fund my Escrow Account.

    E.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed. The Loan Documents constitute a first lien on the Property and are in no way prejudiced by this Agreement.

    F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, the subordinate Promissory Note and the Security Instrument, remain in full force and effect; nothing in this Agreement or the subordinate Promissory Note or the Security Instrument shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the subordinate Promissory Note and the Security Instrument, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

    G.   That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**                    **08/14**      *(Page 5 of 8 Pages)*

Loan No: ███████████                                        Data ID: ███████

2. **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

    A.    TIME IS OF THE ESSENCE under this Agreement;

    B.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate and the subordinate Promissory Note and Security Instrument will not be in effect. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    C.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.**  If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **February 1, 2016** (the "Modification Effective Date") and all unpaid late charges that remain unpaid are waived. The Loan Documents will be modified and the first modified payment will be due on **March 1, 2016.**

    A.    The new Maturity Date will be: **February 1, 2046.**

    B.    The modified Principal balance of my Loan will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Loan will be **$54,666.09** (the "New Principal Balance").

    C.    **$1,094.34** of the New Principal Balance will be the amount of the subordinate Promissory Note payable to the Secretary of Housing and Urban Development and I will not pay interest or make monthly payments on this amount.  The New Principal Balance less the amount of the subordinate Promissory Note shall be referred to as the "Interest Bearing Principal Balance" of the modified Loan and this amount is **$53,571.75.** Interest at the rate of **4.125%** will begin to accrue on the Interest Bearing Principal Balance as of **February 1, 2016** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **March 1, 2016.** My payment schedule for the modified Loan is as follows:

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**              **08/14**     *(Page 3 of 8 Pages)*

Loan No: ███████                                    Data ID: ███

In Witness Whereof, the Lender and I have executed this Agreement.

Date: 4-6-16 _____            _____(Seal)

ALLEN RICHARDSON —Borrower

- Individual Acknowledgment -

STATE OF ~~WISCONSIN~~ Georgia                    §
COUNTY OF ~~MILWAUKEE~~ Rockdale                  §

The foregoing instrument was acknowledged before me on the 6th day of April,
20 16, by

ALLEN RICHARDSON

_____
                                                    Notary Public

_____
                                                    (Printed Name)

My commission expires: December 9th, 2016

AMBER LETT
MY COMMISSION EXPIRES
NOTARY
PUBLIC
DECEMBER 9, 2016
ROCKDALE COUNTY, GEORGIA

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**          08/14      *(Page 6 of 8 Pages)*

Loan No ████████                                    Data ID: ███

Date: **4/14/2016**                    Lender: SELENE FINANCE LP

By: _Tonya Higginbotham_

Its: **Tonya Higginbotham      Vice President**
                              (Printed Name and Title)

- Lender Acknowledgment -

STATE OF **Florida**          §
COUNTY OF **Duval**           §
                              §

This instrument was acknowledged before me on **APRIL  14** , 20 **16** ,

by _**Tonya Higginbotham**_ , as

_**Vice President**_ of SELENE FINANCE LP

_____ Notary Public

**Kristina Gorman**
                        (Printed Name)
My commission expires: **January 27, 2017**

KRISTINA GORMAN
Notary Public - State of Florida
My Comm. Expires Jan 27, 2017
Commission # ██████

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**        08/14     *(Page 7 of 8 Pages)*

Loan No ██████████                                   Data ID: ████
Borrower: ALLEN RICHARDSON
Property Address: 2979 N 54TH ST, MILWAUKEE, WISCONSIN  53210

## LEGAL DESCRIPTION

LOT ONE (1), IN BLOCK FOUR (4), IN HI-VIEW, BEING A SUBDIVISION OF A PART OF THE NORTHWEST ONE-QUARTER (1/4) OF SECTION FOURTEEN (14), IN TOWNSHIP SEVEN (7) NORTH, RANGE TWENTY-ONE (21) EAST, IN THE CITY OF MILWAUKEE COUNTY, WISCONSIN. ██████████

**FHA HOME AFFORDABLE MODIFICATION AGREEMENT**                    **08/14**        *(Page 8 of 8 Pages)*

Loan No. ▮▮▮▮▮
Borrower: ALLEN RICHARDSON

Data ID:▮▮▮▮

## LOAN MODIFICATION AGREEMENT RIDER

THIS LOAN MODIFICATION AGREEMENT RIDER is made this _____ day of _____, 20_____, by and between the undersigned borrower (the "Borrower") and SELENE FINANCE LP, (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain LOAN MODIFICATION AGREEMENT (the "Agreement") of the same date executed by the Borrower and Lender as of the date above.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Agreement, Borrower and Lender further covenant and agree as follows:

1. Costs and Expenses

All costs and expenses incurred by Lender in connection with this Agreement shall be borne by Lender and not paid by Borrower.

2. Escrow Items

Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked. Borrower is hereby advised that beginning on the monthly payment due date set forth above, the amount of Escrow Items will be included with Borrower's monthly payment of principal and interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this LOAN MODIFICATION AGREEMENT RIDER.

..............................................................................(Seal)
ALLEN RICHARDSON —Borrower

Loan No. ████████                                               Data ID: ████
Borrower:   ALLEN RICHARDSON

## ADDENDUM TO LOAN MODIFICATION AGREEMENT

This Addendum to Loan Modification Agreement is executed on this _____ 10 _____ day of _____ April _____, 20 18 and made effective as of February 1, 2016 (the "Addendum"), by and between the undersigned borrower ("Borrower") and SELENE FINANCE LP (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain Loan Modification Agreement (the "Agreement") made _____.

## RECITALS:

WHEREAS, Borrower and Lender entered into the Agreement;

WHEREAS, Borrower, on the same date of the Agreement, executed a Compliance Agreement, which obligated Borrower to fully cooperate with Lender to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Agreement;

WHEREAS, Lender has discovered an omission in the Agreement that was intended to be included as part of the express terms thereof relating to liability for attorneys' fees;

WHEREAS, Lender, under the terms and provisions as contemplated in the Compliance Agreement, has requested Borrower to execute this Addendum for the purposes of correcting the omission;

In consideration of Lender's willingness to modify the terms of the mortgage loan account, and for other good and valuable consideration, IT IS THEREFORE AGREED TO AS FOLLOWS:

1.  The foregoing Recitals are true and correct and are hereby incorporated by this reference.

2.  All terms of the Agreement that do not conflict with the terms of this Addendum shall remain in full force and effect.

3.  The Borrower hereby agrees to release and forever discharge Lender and each of its parents, subsidiaries, affiliates, officers, directors, shareholders, partners, attorneys, trustees, predecessors, successors, representatives, insurers, assignees, agents, employees, administrators, and all persons acting by, through or in any way on behalf of Lender of and from any and all claims, debts, defenses, liabilities, costs, attorney's fees, actions, suits at law or equity, demands, contracts, expenses, damages, whether general, specific or punitive, exemplary, contractual or extra-contractual, and causes of action of any kind or nature which Borrower may now have or claim to have against Lender, including without limitation all claims or causes of action which in any way, directly or indirectly, or in any other way arises from or are connected with or which could have been asserted in connection with the action pending in _____ (the "Action"), and any claim, cause of action, damages, promises or demands which could have been asserted in the Action,

*(Page 1 of 2 Pages)*

Loan No ███████████          Data ID: ███████

which may exist from the beginning of time to the date of this Agreement; and both Lender and Borrower further covenant and agree that this Agreement may be pleaded or asserted by or on behalf of Lender as a defense and complete bar to any action or claim that may be brought against or involving Lender by anyone acting or purporting to act on behalf of the Borrower with respect to any of the matters within the scope of this Agreement excepting only the obligations of the Lender and Borrower under this Agreement. Further, Borrower agrees that Lender and Borrower shall each be responsible for their own attorneys' fees and costs arising from or otherwise related to the Action.

4.    This Agreement may be executed in counterpart facsimile signatures and all such counterparts shall constitute a single form of this Agreement.

    **IN WITNESS WHEREOF, the Parties hereto have caused this document to be executed on the date set out above.**

SELENE FINANCE LP

By: _____

Its: __Tonya Higginbotham__    __Vice President__
                (Printed Name and Title)

Borrower(s) Signature:

_____ 4-6-16 (Seal)
ALLEN RICHARDSON —Borrower

*(Page 2 of 2 Pages)*

Loan No: █████████
·Borrower:  ALLEN RICHARDSON

Data ID: ██

## COMPLIANCE AGREEMENT

In consideration of SELENE FINANCE LP ("Lender") modifying the first lien mortgage loan (the "Loan"), in connection with the property located at 2979 N 54TH ST, MILWAUKEE, WISCONSIN 53210 (the "Modification"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Modification. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Modification to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder.  Failure to comply shall constitute default under the Note and Security Instrument underlying the Modification, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVICE OF COUNSEL.

Date: ___9-6-16___

_____
ALLEN RICHARDSON —Borrower

## CORPORATION ASSIGNMENT OF
## REAL ESTATE MORTGAGE

| DOCUMENT NUMBER | DOCUMENT TITLE |
|---|---|

**DOC .#** ████

REGISTER'S OFFICE | SS
Milwaukee County, WI|

RECORDED   07/31/2009  01:09PM

JOHN LA FAVE
REGISTER OF DEEDS
AMOUNT:        11.00
FEE EXEMPT 77.25 #.  0

RECORDING AREA

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers
to TAYLOR, BEAN & WHITAKER MORTGAGE CORPORATION
all the rights, title and interest of undersigned in and to that certain Real Estate
Mortgage dated June 19, 2009       , executed by
ALLEN RICHARDSON, A SINGLE PERSON

to

THE EQUITABLE BANK, S S B , STATE SAVINGS BANK
and whose address is 2290 NORTH MAYFAIR ROAD, WAUWATOSA, WI 53226

RETURN TO  THE EQUITABLE BANK, S S B
2290 NORTH MAYFAIR ROAD
WAUWATOSA WI 53226
LOAN #

PARCEL IDENTIFICATION NUMBER (PIN)

and recorded in Book/Volume No            , page(s)            , as Document No ████
Milwaukee            County Records, State of Wisconsin            on real estate legally described as follows
LOT ONE (1), IN BLOCK FOUR (4), IN HI-VIEW, BEING A SUBDIVISION OF A PART OF THE NORTHWEST
ONE-QUARTER (1/4) OF SECTION FOURTEEN (14), IN TOWNSHIP SEVEN (7) NORTH, RANGE TWENTY-ONE
(21) EAST, IN THE CITY OF MILWAUKEE, MILWAUKEE COUNTY, WISCONSIN

THIS IS A PURCHASE MONEY MORTGAGE    THIS IS HOMESTEAD PROPERTY

This assignment is made without recourse

TOGETHER with the notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Real estate Mortgage

DATED  June 19, 2009                                    THE EQUITABLE BANK, S S B

_____                    _Bruce K Andrich_
Witness                                     Bruce K  Andrich, Senior VP - Lending

_____                    _Mary Beres_
Witness                                     Mary Beres, Asst VP - Loan Processing

STATE OF WISCONSIN            ) ss
COUNTY OF MILWAUKEE          )
On June 19, 2009            before me, the undersigned, a Notary Public in and for the said County and State,
personally appeared  Bruce K  Andrich And Mary Beres

to me personally known, who, being duly sworn by me, did say that he/she is the      ,
Senior VP - Lending And Asst VP - Loan Processing
of the corporation named herein which executed the within instrument, that the seal affixed to said instrument is the
corporate seal of said corporation, that said instrument was signed and sealed on behalf of said corporation pursuant to its
by-laws or a resolution of its Board of Directors and that he/she acknowledges said instrument to be the free act and deed
of said corporation

_Renate Oliver_
Notary Public for the state of Wisconsin
My commission expires   5/20/2012
RENATE OLIVER
Milwaukee County

ASSIGNMENT OF MORTGAGE

This Instrument was Drafted By  RENATE OLIVER

**DOC #** ██████████████

**RECORDED**
**10/19/2018 11:12 AM**

**JOHN LA FAVE**
**REGISTER OF DEEDS**
**Milwaukee County, WI**
**AMOUNT: 30.00**
**TRANSFER FEE:**
**FEE EXEMPT #:**
**\*\*\*This document has been**
**electronically recorded and**
**returned to the submitter.\*\*\***

Prepared by, Recording Requested By and Return to:
SELENE FINANCE LP
9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TX 77042
Prepared By:
Printed Name: V Cumbie

# ASSIGNMENT OF MORTGAGE

*FOR VALUE RECEIVED,*
ASSIGNOR:  **GOVERNMENT NATIONAL MORTGAGE ASSOCIATION FOR TAYLOR, BEAN &
WHITAKER TO 12 U.S.C., 1721 (G), ITS SUCCESSORS AND ASSIGNS,** whose address is C/O SELENE
FINANCE LP, 9990 RICHMOND AVE, STE 400 S, Houston, TX 77042, does hereby assign and transfer to
ASSIGNEE: **SELENE FINANCE LP,** whose address is 9990 RICHMOND AVE, STE 400 S, HOUSTON, TX
77042, all its right, title and interest in and to the described Mortgage:
BORROWER: **ALLEN L. RICHARDSON, AN UNMARRIED PERSON**
BENEFICIARY: **THE EQUITABLE BANK, SSB, ITS SUCCESSORS AND ASSIGNS**
DATED: **6/19/2009**                AMOUNT: **$57,488.00**
RECORDED: **7/31/2009** at  Instrument or Document ██████████
in the **MILWAUKEE** County Clerk's Office, State of **WISCONSIN**.

Property Address: 2979 NORTH 54TH STREET, MILWAUKEE, WISCONSIN 53210
Legal Description: LOT ONE (1) IN BLOCK FOUR (4) IN HI-VIEW, BEING A SUBDIVISION OF A PART OF
THE NORTHWEST ONE-QUARTER (1/4) OF SECTION FOURTEEN (14), IN TOWNSHIP SEVEN (7)
NORTH, RANGE TWENTY-ONE (21) EAST IN THE CITY OF MILWAUKEE, MILWAUKEE COUNTY,
WISCONSIN.

Executed this        10-15-2018

**GOVERNMENT NATIONAL MORTGAGE ASSOCIATION FOR TAYLOR, BEAN & WHITAKER TO 12
U.S.C., 1721 (G) BY SELENE FINANCE LP, ATTORNEY IN FACT**

By:     DONNA BRAMMER
Title:  VICE PRESIDENT

## ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF HARRIS


This instrument was acknowledged before me on ___ 10-15-18 ___ by DONNA BRAMMER the VICE PRESIDENT of SELENE FINANCE LP, A DELAWARE LIMITED PARTNERSHIP, AS ATTORNEY IN FACT FOR GOVERNMENT NATIONAL MORTGAGE ASSOCIATION FOR TAYLOR, BEAN & WHITAKER TO 12 U.S.C., 1721 (G), on behalf of said corporation.



_____
Notary Public in and for the State of TEXAS
Notary's Printed Name:  JOSE BERRUETE
My Commission Expires: 8/8/2021



For ▉▉▉ dated 9/19/2009







3 bd | 1 ba | 1,451 sqft

**2979 N 54th St, Milwaukee, WI 53210**

● Off market | Zestimate®: $120,597 | Rent Zestimate®: $1,000/mo

Est. refi payment: $738/mo  $ **See current rates**

Home value | Owner tools | Home details | Neighborhood det: ›

## Home value

### Zestimate
# $120,597

  

ZESTIMATE RANGE | LAST 30 DAY CHANGE | ONE YEAR FORECAST
$100,000 - $144,000 | +$1,178 (+1.0%) | $125,421 (+4.0%)

## Inside the Zestimate

The Zestimate is Zillow's best estimate of a home's value. It is based on a blend of valuation methods, each of which may produce a different estimate depending on the available data.

**ESTIMATE BASED ON**

| Comparable homes | $121,565 ⌄ |
| --- | --- |
| Local tax assessments | $80,961 ⌃ |

This estimate looks at the regional average amount that homes sell for above or below their tax assessed value. We then use that number to determine the value of this home, based on its